**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

RAFAEL ARROYO-MELECIO, ET AL.
  Plaintiffs,

v.

PUERTO RICAN AMERICAN INSURANCE
CO., ET AL.,
  Defendants.

Civil No. 02-1396 (HL)

**OPINION AND ORDER**

Before the Court is Plaintiffs Rafael Arroyo-Melecio, Daniel Espinosa de León, and Angel M. Ortiz Quiñones' ("Plaintiffs'") motion to certify their present action as a class action.[1] Defendants opposed such certification in their Motion to Strike Plaintiffs' Motion for Class Certification.[2] For the reasons set forth below, the Court denies Plaintiffs' motion for class certification.

**BACKGROUND**[3]

Plaintiffs, consumers of compulsory motor vehicle insurance in Puerto Rico, filed a putative class action on March 18, 2002, on behalf of themselves and all persons similarly situated, against the Asociación de Suscripción Conjunta de Seguro de Responsabilidad Obligatorio, known by its English title as the Joint Underwriter's Association (hereinafter

---

[1] *See* Dkt. No. 98.

[2] *See* Dkt. No. 99.

[3] The facts of this case have been provided in careful detail in the Court of Appeals for the First Circuit's opinion, *Arroyo-Melecio v. Puerto Rican American Ins. Co.*, 398 F.3d 56 (1st Cir.2005), as well as the magistrate judge's Report and Recommendation of July 23, 2003 (Dkt. No. 40), and thus, need not be wholly reiterated here.

"JUA"), and eleven private insurers,[4] alleging violations of the Sherman Act, 15 U.S.C. § 1 *et seq.*, the Clayton Act, 15 U.S.C. § 12 *et seq.,* and various Puerto Rico antitrust laws. Specifically, Plaintiffs allege that Defendants: (1) agreed to and created a monopoly in the JUA as to low-cost compulsory insurance and (2) boycotted and coerced broker Casellas and Co. in order to maintain a monopoly. On November 26, 2003, the Court, adopting and approving the magistrate judge's Report and Recommendation, dismissed Plaintiffs' action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[5] Fed.R.Civ.P. 12(b)(6). Appeal was taken and the Court of Appeals for the First Circuit affirmed in part and reversed in part the judgment of this Court. The reversal was limited only "to the Casellas boycott federal antitrust claims." *Arroyo-Melecio v. Puerto Rican American Ins. Co.*, 398 F.3d 56, 74 (1st Cir.2005).

Section 1 of the Sherman Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce among the several States . . . is . . . illegal." 15 U.S.C. § 1. The McCarran-Ferguson Act of 1945, 15 U.S.C. § 1011 *et seq.*, however, "exempts the 'business of insurance' from review under federal antitrust laws to the extent that it is 'regulated by State law.'" *Arroyo-Melecio*, 398 F.3d at 66 (citing 15 U.S.C. § 1012(b)). An exception to the McCarran-Ferguson Act's insurance exemption exists for "boycott, coercion, or intimidation." 15 U.S.C. § 1013(b). Plaintiffs argue that their boycott claims concerning broker Casellas and Co. ("Casellas") fall within this exception. Plaintiffs allege that Defendants coerced and intimidated Casellas by: (1) threatening Casellas' clients that they should not do business with Casellas if Casellas continued to attempt to sell compulsory automobile insurance through private companies and (2) telling other members in the insurance community that Casellas' attempt to sell compulsory insurance through private

---

[4] The private insurers are: Mapfre Praico Insurance Co. (formerly known as Puerto Rican American Insurance Co.); Universal Insurance Co.; Mapfre Preferred Risk Insurance (formerly known as Preferred Risk Insurance); Integrand Assurance Co.; Triple SSS, Inc.; National Insurance Co.; American International Insurance Co. Of Puerto Rico; Cooperativa de Seguros Multiples; Royal & Sun Alliance Insurance Co.; Caribbean Alliance Insurance Co.; Allstate Insurance Co.

[5] *See* Dkt. No. 51.

3

insurers were illegal and that people who did business with Casellas would go to jail. Plaintiffs argue that these statements and threats of harm to Casellas constitute boycott, coercion, and/or intimidation, and have caused injuries to consumers. Plaintiffs allege that Defendants made these threats and comments in order to retaliate against Casellas' for attempting to place customers' orders for compulsory insurance with private insurers rather than the JUA and possibly for securing a limited number of compulsory insurance policies with Seguros Triple S.

On November 23, 2005, Plaintiffs filed a motion to certify the present action as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure. Fed.R.Civ.P. 23(a), (b)(3). Defendants duly opposed said motion.

**DISCUSSION**

"To obtain class certification, the plaintiff must establish the four elements of Rule 23(a) and one of the several elements of Rule 23(b)." *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 38 (1st Cir.2003) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)). The elements of Rule 23(a) are "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). If all of these requirements are met, the plaintiff must establish that the action is maintainable under one of the three subsections of Rule 23(b). In the case at hand, Plaintiffs claim that certification as a class is proper under Rule 23(b)(3). Rule 23(b)(3) provides that an action may be maintained as a class action where "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). The burden falls on Plaintiffs to show that all the prerequisites for a class action have been met.

The Court finds that Plaintiffs have failed to establish the threshold requirement of Rule

4

23(a)(2) that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). This element requires that the "resolution of the common questions affect all or a substantial number of the class members." *Duhaime v. John Hancock Mut. Life Ins. Co*, 177 F.R.D. 54, 63 (D.Mass.1997) (*quoting Jenkins v. Raymark Indus*., 782 F.2d 468, 472 (5th Cir.1986)). Plaintiffs' proposed class definition is "all Motor Vehicle Owners in the Commonwealth of Puerto Rico, who in compliance with [Commonwealth of Puerto Rico Compulsory Motor Vehicle Liability Insurance Act, Law 253, 26 L.P.R.A. § 8051 *et seq.*] acquired the compulsory insurance by paying the corresponding premiums of $99.00 and $148.00 during the years 1998 to 2005 and did not acquire traditional insurance" including "1,000,000 to 1,500,0000 [sic] motor vehicle owners who are forced to pay a premium for compulsory motor vehicle insurance." Dkt. No. 98-1 at p.1; Dkt. No. 98-2 at p.11. Plaintiffs' proposed class of between 1 million and 1.5 million– or more– vehicle owners, is far more extensive than the subset of vehicle owners who were conceivably affected by the alleged Casellas boycott. Plaintiffs allege that broker Casellas submitted a mere 40,000 applications for compulsory vehicle insurance to defendant insurance companies. Even adding to that figure any other motor vehicle owners who may have possibly been affected by the threats to Casellas' clients or disparaging statements concerning Casellas' disseminated within the insurance community, the group of cognizably aggrieved persons must fall short of Plaintiffs' proposed class. Plaintiffs' class, as presently defined, is too broad and would result in a class in which there is not sufficient commonality of questions of fact or law.

Further, in the Court of Appeals for the First Circuit's opinion of February 14, 2005, the First Circuit upheld this Court's dismissal of Plaintiffs' claims based on allegations that policy holders may have paid higher rates as a result of agreements amongst Defendants not to provide compulsory insurance as private insurers. *Arroyo-Melecio*, 398 F.3d at 74. Despite the dismissal of said claims, Plaintiffs still attempt to certify a class that includes vehicle owners who have had to pay higher insurance premiums as a result of the alleged horizontal agreements. Specifically, Plaintiffs seek to certify a class that comprises 1 million to 1.5 million "motor vehicle owners who are forced to pay a premium for compulsory motor vehicle

insurance." Dkt. No. 98-1 at p.1. Plaintiffs make it clear that the class is not "limited to those motor vehicle owners that Casellas, or Casellas collaborators, would have sold compulsory insurance." Dkt No. 98-2 at p.11. However, this limitation that Plaintiffs attempt to avoid is the very limitation imposed by the First Circuit, which held that Plaintiffs' case survives only "as to the Casellas boycott federal antitrust claims." *Arroyo-Melecio*, 398 F.3d at 74. The questions of law and fact are patently distinct with respect to any alleged horizontal agreements amongst Defendants and the alleged boycotting activities directed at Casellas. Plaintiffs cannot define a class to include individuals whose claims are *solely* based on conduct that the First Circuit has deemed permissible.[6]

Even if Plaintiffs could hurdle the Rule 23(a) prerequisites, they could not establish the more rigorous requirements set forth in Rule 23(b)(3) that: (1) the questions of law or fact common to the members of the class must predominate over any questions affecting only individual members; and (2) a class action must be superior to other available methods for the fair and efficient adjudication of the controversy. Fed.R.Civ.P. 23(b)(3). The predominancy inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Here, the proposed class is not sufficiently cohesive to warrant adjudication because, as discussed above, there is insufficient commonality of questions of facts and law between the factions of the class.

In determining the appropriateness of a Rule 23(b)(3) class action "[t]he fundamental question to decide is whether the group aspiring to class status is seeking to remedy a common legal grievance." WRIGHT, ET AL., FEDERAL PRACTICE & PROCEDURE § 1778, at p.118 (1990) (quoting *Bennett v. Gravelle*, 323 F.Supp. 203, 218 (D.C.Md.1971)). The proposed class, as currently defined, does not appear to seek to remedy a common legal grievance because the majority of the group are challenging conduct that was not directly related to the Casellas

---

[6] The First Circuit held that the motor vehicle owners who comprise the subset of Plaintiffs' proposed class that paid higher premiums as a result of any horizontal agreements were subject to what the First Circuit labeled a "permissible cartel." *Arroyo-Melecio*, 398 F.3d at 70.

boycott federal antitrust claims. In determining whether class-action treatment would be superior, an additional important consideration is "the difficulties likely to be encountered in the management of a class action." Fed.R.Civ.P. 23(b)(3)(D). The difficulties likely to be encountered in the management of the class action that Plaintiffs propose are significant. Rather than tailoring a class definition of persons affected by the surviving Casellas boycott federal antitrust claims, Plaintiffs have selected an exceedingly sprawling and unmanageable class. Due to the unwieldiness and over breadth of the class, the determination of the class member's injuries, if any, will be made unnecessarily difficult and Defendants will likely have to engage in needless costly discovery. The proposed class, as presently crafted, is simply over-broad and not sufficiently cohesive to warrant adjudication by class action pursuant to Rule 23(b)(3). Fed.R.Civ.P. 23(b)(3).

## CONCLUSION

For the aforementioned reasons, the Court hereby **denies** Plaintiffs' motion for class certification.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, March 8, 2006.

S/ HECTOR M. LAFFITTE
United States District Judge